**BET TZEDEK LEGAL SERVICES**
Mary Tanagho Ross (Cal. Bar No. 280657)
E-mail: mross@bettzedek.org
Kelsey Chapple (Cal. Bar No. 313928)
E-mail: kchapple@bettzedek.org
3250 Wilshire Boulevard, 13th Floor
Los Angeles, California 90010
Telephone: (323) 939-0506
Facsimile: (213) 471-4568

**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld (Cal. Bar No. 136896)
jeffrey.rosenfeld@alston.com
Brooke H. Bolender (Cal. Bar No. 340689)
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Attorneys for Plaintiff
SUMIATI (aka SUMIATI TRIONO)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SUMIATI (A/K/A SUMIATI TRIONO),

Plaintiff,

v.

JING WEN HU, ZIXIANG DENG, CRYSTALG, INC., and DOES 1–50, inclusive,

Defendants.

Case No.: 5:26-cv-00057

**COMPLAINT FOR:**

1. **FORCED LABOR UNDER TVPRA**
2. **TRAFFICKING WITH RESPECT TO FORCED LABOR UNDER TVPRA**
3. **UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS UNDER TVPRA**
4. **KNOWINGLY BENEFITTING FROM LABOR TRAFFICKING UNDER TVPRA**
5. **HUMAN TRAFFICKING UNDER CAL. CIV. CODE § 52.5**
6. **FAILURE TO PAY MINIMUM WAGE AND OVERTIME**
7. **FAILURE TO PAY MEAL BREAK PREMIUMS**
8. **FAILURE TO PAY REST BREAK PREMIUMS**
9. **WAITING TIME PENALTIES**
10. **RETALIATION AND WRONGFUL TERMINATION**
11. **SOLICITATION OF EMPLOYEE THROUGH MISREPRESENTATION**

**12.FRAUD**
**13.FALSE IMPRISONMENT**
**14.CONVERSION**
**15.VIOLATION OF CAL. PENAL CODE § 496**
**16.BREACH OF ORAL CONTRACT**
**17.VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**

**DEMAND FOR JURY TRIAL**

Plaintiff Sumiati a/k/a Sumiati Triono ("Sumiati") brings this action against Defendants Jing Wen Hu, Zixiang Deng, and CrystalG, Inc. ("Defendants") and alleges as follows:

## INTRODUCTION

This is an action for damages and other relief arising out of the trafficking, forced labor, and abuse of Sumiati by Defendants, and Defendants' retaliation against her for speaking up about Defendants' exploitation. Defendants lured Sumiati to the United States to work in their home with false promises about pay and her ability to return home if she desired. Once Defendants obtained and kept Sumiati's passport and transported her to their home in Rancho Cucamonga, California, Defendants forced Sumiati to work unacceptably long hours in their home and as an off-the-books employee of their business—all without the pay or breaks required by California law. Defendants exercised control over Sumiati through fraudulent promises and mental and emotional abuse. Sumiati endured these conditions for over three years until Defendants unlawfully terminated her and threw her out of the home after she complained about Defendants' unlawful threat to withhold wages she still has not received. Sumiati, an immigrant who could not speak English, and who lacked any money, job prospects, and friends or family in the United States, was forced to fend for herself in a country she did not understand and was taught by Defendants to fear.

Sumiati now seeks remedies against Defendants to redress their violations of her basic human and civil rights, violations of federal human trafficking laws and California labor standards, and other California law.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581, et seq. This Court has supplemental jurisdiction over all state and common law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Sumiati's claims occurred in this District, and Defendant CrystalG, Inc. has its principal places of business in Los Angeles County and Defendants Jing Wen Hu and Zixiang Deng reside in San Bernardino County.

**PARTIES**

3. Plaintiff Sumiati resides in Los Angeles County, California. During the relevant time period, Sumiati was employed as a domestic worker by Defendants Jing Wen Hu ("Hu") and Zixiang Deng ("Deng") in their home and also performed work for Hu and Deng's business, CrystalG, Inc.

4. Sumiati is informed and believes, and on that basis alleges, that Defendant Hu resides in Rancho Cucamonga, San Bernardino County, California, and previously resided in Hacienda Heights, Los Angeles County, California. Sumiati is informed and believes, and on that basis alleges, that Defendant Hu is the spouse of Defendant Deng and is owner of Defendant CrystalG, Inc.

5. Sumiati is informed and believes, and on that basis alleges, that Defendant Deng resides in Rancho Cucamonga, San Bernardino County, California, and previously resided in Hacienda Heights, Los Angeles County, California. Sumiati is informed and believes, and on that basis alleges, that Defendant Deng is the spouse of Defendant Hu and is an agent and employee of Defendant CrystalG, Inc.

6. Defendant CrystalG, Inc. ("CrystalG") is a California corporation with its principal place of business at 1180 North White Avenue, Pomona, Los Angeles County, California. On information and belief, CrystalG is owned by Defendant Hu and operated by Defendants Hu and Deng.

7. The true names and capacities of Defendants Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Sumiati, who therefore sues these Defendants by fictitious names. Sumiati will amend this Complaint to include the true names and capacities of those Defendants after they have been

ascertained. Sumiati is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint and that Sumiati's damages as alleged in the Complaint were proximately caused by the acts or omissions of such Defendants.

8. Sumiati is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, each and every Defendant was the agent or employee of each and every other Defendant, and in doing the acts alleged, was acting within the course and scope of such agency or employment, with the consent, provision, and authorization of each of the remaining Defendants. All actions of each Defendant were ratified and approved by every other Defendant.

9. Sumiati is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, each and every Defendant entered into a conspiracy and agreement with every other Defendant, or later joined that conspiracy and ratified the acts and conduct of other Defendants who had entered the conspiracy. Sumiati is further informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, all Defendants knowingly, maliciously, and willfully entered into that conspiracy. The purposes of this conspiracy included, but were not limited to, the wrongs alleged in this Complaint. All Defendants' acts and failures to act as alleged in this Complaint were perpetrated in furtherance of the conspiracy.

## **FACTUAL ALLEGATIONS**

10. Sumiati was a citizen of Indonesia residing in Singapore immediately before the incidents described in this Complaint.

11. In approximately 2016, Defendants Hu and Deng hired Sumiati as a domestic servant in their home in Singapore. An agency in Indonesia placed Sumiati with the Defendant family to work as a nanny in Singapore.

12. In 2020, Defendants Hu and Deng assisted Sumiati in obtaining a travel visa to accompany their family to the United States. Defendants Hu and Deng represented to Sumiati that if she agreed to come to the United States to work for them,

she would earn 800 Singapore dollars (approximately 600 U.S. dollars) per month, her duties would be similar to her domestic work in Singapore, and she would be able to return to Singapore after three months if she desired. Relying on these misrepresentations, Sumiati agreed to accompany Defendants Hu and Deng to the United States. Unbeknownst to Sumiati, Defendants Hu and Deng had no intention of ever honoring these false promises. Contrary to these promises, Defendants did not pay Sumiati the wages to which she was entitled.

13. Defendants Hu and Deng purchased airfare for Sumiati and arranged for her to travel from Singapore to the United States.

14. On or about April 2020, Defendants and Sumiati flew together to Los Angeles, California. Upon arriving in the United States and after passing through customs in April 2020, Defendants Hu and Deng immediately confiscated Sumiati's passport and maintained possession and control of it until the day they kicked Sumiati out of their home.

15. Sumiati thereafter worked in Defendants Hu and Deng's home in Hacienda Heights, California, for the next three months. At the end of that three-month period, Defendants Hu and Deng reneged on their prior assurance that Sumiati could return to Singapore and informed Sumiati that her U.S. visa would soon expire. Sumiati had no means or way to return to Singapore and continued to labor without pay for the Defendants.

16. Around this time, Defendants Hu and Deng falsely represented that if Sumiati remained in the United States and continued to work for them for another five years, she would qualify for a green card. Defendants Hu and Deng explained that the green card application would be expensive but promised to pay half the cost. Defendants Hu and Deng required Sumiati to pay the other half of the cost from her future wages. Sumiati continued to work for Defendants, in reliance on their false promise that she would then receive permanent resident status in the United States. Sumiati's U.S. visa expired on September 3, 2020.

17. A few months later, Sumiati received a tearful phone call from her child in Indonesia, who begged her to come home and visit. Wishing to see her child, Sumiati asked Defendants Hu and Deng for permission to return to Indonesia to visit. Defendants Hu and Deng told Sumiati that they bought her a plane ticket to return home and that they would deduct the cost of the ticket from her wages. But Defendants Hu and Deng then falsely told Sumiati that if she left the United States, she would no longer qualify for a green card and that they would be severely punished by the U.S. government for having been Sumiati's green card sponsor. Believing these threats and lies, Sumiati did not visit her child and instead continued to labor for Defendants Hu and Deng in the United States.

18. Defendants Hu and Deng increased Sumiati's work duties after her visa expired, including requiring her to perform food preparation, cleaning tasks, and deliveries for CrystalG. These duties were in addition to Sumiati's domestic responsibilities in Defendants Hu and Deng's home.

19. On a daily basis, Sumiati cooked and cleaned for Defendants Hu and Deng's family, provided childcare for their minor child, and performed between five and seven hours of food preparation, deliveries, and cleaning tasks for Defendant CrystalG.

20. Pulling double duty as a domestic servant in Defendants Hu and Deng's home and as an off-the-books employee of Defendant CrystalG, Sumiati worked up to eighteen hours per day, seven days per week. Sumiati typically began work at 5:30 a.m. and continued working until as late as 11:30 p.m. without rest or meal breaks.

21. Overworked from 18-hour days, Sumiati had little time for rest or respite. Defendants Hu and Deng would often rouse Sumiati from her sleep an hour or two after she had fallen asleep to force her to clean the dishes after they had eaten late dinners. Sumiati would struggle to fall back asleep after Defendants Hu and Deng woke her, often getting only three to four hours of sleep each night under these conditions.

22. Sumiati's troubles did not end at long hours and sleep deprivation. To add insult to injury, Defendants Hu and Deng subjected Sumiati to abuse and privation in their home. On at least one occasion, for example, Sumiati accidentally cut herself while preparing seafood for Defendant CrystalG. Neither Defendants Hu nor Deng bothered to offer Sumiati basic medical care or treatment for her cut or offer to take her to a doctor. Defendants Hu and Deng did not even bother to ask Sumiati if she needed any of those things. Instead, Sumiati's injury went untreated and later became infected. In all the years she worked for Defendants in the United States, Sumiati was never allowed to access medical care or to see a doctor.

23. Defendants Hu and Deng and their family verbally and emotionally abused Sumiati on a regular basis, belittling her with epithets such as "stupid," "idiot," and "trash." This barrage of abuse contributed to the environment under which Sumiati was forced to continue to work for Defendants.

24. When Sumiati made mistakes, Defendants Hu and Deng would punish her by telling her that they would garnish her wages or would threaten to fire her and evict her from their home, leaving her alone in a country where she was friendless, had no family members, had no money, and was unable to speak English. Sumiati often cried in her room at night after suffering Defendants Hu and Deng's abuse.

25. Defendants Hu and Deng threatened Sumiati that she would be harmed if she tried to leave the house. Defendants Hu and Deng told Sumiati to fear the outside world by telling her that she could not trust anyone outside of their family.

26. Defendants also rejected Sumiati's request for any days off from the grueling work to which she was subjected.

27. Defendants' mistreatment of Sumiati persisted until November 10, 2023. That day, Defendants Hu and Deng yelled at Sumiati for allegedly improperly cooking chicken that Sumiati had been preparing for Defendant CrystalG and threatened to withhold one month of Sumiati's wage to cover the cost of replacement. When Sumiati requested that she be given rest of the day off if her wages were to be deducted,

Defendants Hu and Deng retaliated against her by firing her and evicting her from their home. Defendants Hu and Deng also confiscated Sumiati's cellphone, which was her main source of communication.

28. Contrary to the promises made to Sumiati, Defendants Hu and Deng never paid Sumiati the wages to which she was entitled for her work in their home and business.

29. Defendants' actions demonstrate that they acted with evil motive, actual malice, deliberate violence or oppression, intent to injure or willful disregard for Sumiati's rights, and Defendants' conduct was outrageous, grossly fraudulent and/or reckless towards Sumiati's safety.

## FIRST CAUSE OF ACTION
**(Forced Labor Under the TVPRA, 18 U.S.C. § 1589)**
**Against All Defendants**

30. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

31. Sumiati brings this claim under 18 U.S.C. § 1595 of the TVPRA against Defendants, who subjected her to forced labor in violation of 18 U.S.C. § 1589.

32. After luring Sumiati to the United States with false promises of humane working conditions, Defendants trapped her in a verbally abusive environment for subminimum wages, causing her physical, psychological, and financial harm, in order to obtain her labor in violation of 18 U.S.C. § 1589(a)(2).

33. Defendants unlawfully obtained Sumiati's labor through threatened abuse of law or legal process. Defendants unlawfully obtained Sumiati's labor when they threatened that she would be harmed if she tried to leave their home.

34. Defendants engaged in a scheme, plan, or pattern of behavior intended to cause Sumiati to believe that she would suffer serious harm if she ceased to work for them, in violation of 18 U.S.C. § 1589(a)(4).

35. Defendants also knowingly benefited from their participation in a venture to obtain Sumiati's labor and services as a domestic worker as described above, while

knowing or acting with reckless disregard that their venture was obtaining Sumiati's labor by such means, in violation of 18 U.S.C. § 1589(b).

36. Sumiati suffered damages as a result of the above violations, totaling at least $468,815.50.

37. As a result of Defendants' actions, Sumiati was forced to continue laboring and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages. Under 18 U.S.C. § 1595, Sumiati is entitled to recover damages and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial for their wrongful conduct. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
**(Trafficking with Respect to Forced Labor Under the TVPRA, 18 U.S.C. § 1590)**
**Against Defendants Hu and Deng**

38. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

39. Defendants Hu and Deng recruited Sumiati in Singapore and made the arrangements for Sumiati's visa so that she could labor for Defendants in the United States. They misrepresented the terms of her employment and did not pay her or provide benefits in accordance with her contracts.

40. Defendants Hu and Deng obtained Sumiati's labor as a result of their recruitment efforts.

41. Working together, Defendants Hu and Deng trafficked Sumiati for the purpose of obtaining and maintaining her forced labor, in violation of 18 U.S.C. § 1589. Consequently, Defendants violated 18 U.S.C. § 1590(a).

42. As a result of Defendants Hu and Deng's actions, Sumiati was coerced into and forced to continue laboring for Defendants and suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, totaling at least $468,815.50. Under 18 U.S.C. § 1595, Sumiati is entitled to recover damages and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial for Defendants' wrongful conduct. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**(Unlawful Conduct with Respect to Documents under the TVPRA, 18 U.S.C. § 1592)**
**Against Defendants Hu and Deng**

43. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

44. Defendants Hu and Deng knowingly confiscated and maintained possession of Sumiati's passport and visa throughout the period of her employment.

45. Defendants knowingly confiscated and maintained possession of Sumiati's passport and visa in the course of subjecting her to forced labor under 18 U.S.C. § 1589 and trafficking with respect to forced labor under 18 U.S.C. § 1590, and "to prevent or restrict or to attempt to prevent or restrict, without lawful authority, [Sumiati's] liberty to move or travel, in order to maintain [her] labor or services" in violation of 18 U.S.C. § 1592(a)(1) and (a)(3).

46. Sumiati suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, totaling at least $468,815.50, as a result of Defendants' conduct. Under 18 U.S.C. § 1595, Sumiati is entitled to recover damages and reasonable

attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Knowingly Benefitting from Labor Trafficking Under the TVPRA, 18 U.S.C. § 1592)**
**Against All Defendants**

47. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

48. Defendants knowingly benefitted financially from participating in a venture "knowing or in reckless disregard of the fact that the venture" subjected Sumiati to forced labor, 18 U.S.C. § 1590, and committed unlawful conduct with respect to documents in furtherance of tracking, 18 U.S.C. § 1592, in violation of 18 U.S.C. § 1593A.

49. Sumiati suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, totaling at least $468,815.50, as a result of Defendants' conduct. Under 18 U.S.C. § 1595, Sumiati is entitled to recover damages and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati.

Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**(Human Trafficking – Cal. Civ. Code § 52.5)**
**Against All Defendants**

50. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

51. Sumiati brings this claim for relief under California Civil Code section 52.5, which allows a victim of human trafficking, as defined in California Penal Code section 236.1, to recover in a civil action actual damages, compensatory damages, punitive damages, and/or any other appropriate relief, as well as attorney's fees and costs of suit. California Civil Code section 52.5(b) also allows a victim of human trafficking to recover treble damages.

52. A claim may be brought under California Civil Code section 52.5 against any person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, or who sustains a restriction on another's liberty through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury where the person receiving or apprehending the threat reasonably believes that the person making the threat would carry it out. A person violates section 52.5 if they secured the labor of another person through use of **any one** of these means. *See United States v. Barai*, 55 F.4th 1245, 1250 (9th Cir. 2022). Duress includes knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or immigration document of the victim. For purposes of California Penal Code section 236.1, "forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, or coercion, or equivalent conduct that would reasonably overbear the will of the person.

53. As alleged in this Complaint, Defendants Hu and Deng used fraud and/or deceit to contract with Sumiati for her employment and to bring her to the United States. Defendants Hu and Deng then used threats, intimidation, fraud, deceit and/or coercion

to overbear Sumiati's will, to deprive her of her personal liberty by holding her in captivity, and to force her to work without paying the wages to which she was entitled.

54. Defendants Hu and Deng withheld Sumiati's passport after she arrived in the United States in the course of committing their violations of California Civil Code section 52.5.

55. Through such actions, Defendants Hu and Deng, acting individually and in concert, and with malice, oppression, fraud and/or duress, subjected Sumiati to a situation of human trafficking.

56. As a direct and proximate result of these actions, Sumiati has sustained damages, including extreme mental suffering, humiliation, emotional distress, and economic losses, entitling her to damages totaling at least $468,815.50 and reasonable attorney's fees.

57. Because Defendants Hu and Deng unlawfully subjected Sumiati to a situation of human trafficking, they are liable to Sumiati for treble damages and punitive damages in amounts to be proven at trial.

## SIXTH CAUSE OF ACTION
**(Failure to Pay Minimum Wage and Overtime – Cal. Labor Code §§ 558.1, 1182.11–1182.13, 1194, 1194.2, 1197; General Minimum Wage Order; IWC Wage Order 15)**
**Against All Defendants**

58. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

59. Labor Code section 1197 establishes the right of employees to be paid minimum wages and overtime for their work, in amounts set by state law. Labor Code sections 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage and legal overtime pay may recover the unpaid balance together with attorney's fees and costs of suit, as well as liquidated damages in an amount equal to the wages unpaid and interest on those amounts.

60. Labor Code section 1197 requires the payment of no less than the minimum wage fixed by the Industrial Welfare Commission ("IWC") for all persons

employed in this State. Labor Code section 1198 and the IWC Wage Order 15 provide that domestic service "live-in" employees in California shall not be employed more than nine hours in any workday for the first five workdays in a work week unless they receive additional compensation beyond their regular wages in amounts specified by law. Such an employee is entitled to overtime pay at a rate of one and one-half times her regular rate for all hours worked in excess of nine during the first five workdays. For the first nine hours worked on the sixth and seventh days of the work week, the employee is entitled to be paid one and one-half times her regular rate. For the remaining hours worked on the sixth and seventh days, the employee is entitled to be paid at double her regular rate.

61. IWC Wage Order 15 required Defendants to pay Sumiati at least the applicable state minimum wage for each hour worked at the rate of $12.00 per hour until January 1, 2021; $13.00 per hour from January 1, 2021 to December 31, 2021; $14.00 per hour from January 1, 2022 to December 31, 2022; and $15.50 per hour beginning January 1, 2023.

62. California Labor Code section 1194 entitles an employee receiving less than the minimum wage to recover in a civil action the unpaid balance of the full amount of this minimum wage, including interest thereon, reasonable attorney's fees, and costs of suit.

63. California Labor Code section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the wages of unlawfully unpaid and interest thereon.

64. California Labor Code section 558.1(a) provides for liability for any employer or "other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or house and days of work in any order of the Industrial Welfare Commission . . . or [Labor Code] Section [. . .] 1194." California Labor Code section 558.1(b) provides that "other person" is "a natural person who is an owner, director, officer, or managing agent" of an employer.

65. IWC Wage Order 15 defines "employer" as "any person" who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

66. IWC Wage Order 15 defines "employ" as "to engage, suffer, or permit to work."

67. Sumiati was employed by Defendants in the U.S. from approximately April 2020 to November 10, 2023.

68. All Defendants engaged, suffered, or permitted Sumiati to work for them and/or exercised control over Sumiati's wages, hours, or working conditions.

69. Defendants failed to pay wages to which Sumiati was entitled during this period.

70. All Defendants were, at all relevant times, the employer and/or acted on behalf of the employer, and violated or caused to be violated the provisions regulating minimum wages or hours and days of work as set forth in the IWC Wage Order and Labor Code section 1194. Defendants are therefore individually liable for these violations.

71. Defendants' unlawful failure and refusal to pay Sumiati wages in the amount and at the time due as required by law has caused Sumiati to suffer damages of at least $468,815.50, and she is entitled to all appropriate penalties provided by the Labor Code and the IWC Wage Order, including the full amount of minimum wages and overtime wages owed, including interest, liquidated damages, civil penalties, and reasonable attorney's fees and costs.

**SEVENTH CAUSE OF ACTION**
**(For Failure to Pay Meal Break Premiums – Cal. Labor Code § 226.7(c))**
**Against All Defendants**

72. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

73. Under California Labor Code section 226.7(b) and IWC Wage Order 15, employees are entitled to a 30-minute unpaid meal break for every 5 hours of work. The

meal breaks must not be interrupted by work tasks, and the employer must allow an employee to leave the worksite.

74. Defendants did not afford Sumiati any 30-minute, uninterrupted meal breaks for every 5 hours that she worked, and Sumiati was not allowed to leave Defendant Hu and Deng's home or Defendant CrystalG's premises for meal breaks.

75. Defendants' unlawful failure and refusal to provide such meal breaks entitles Sumiati to meal break premiums in the form of one additional hour of pay at the employee's regular rate of compensation for each workday that a meal break was not provided under California Labor Code section 226.7(c).

76. Sumiati is entitled to meal break premiums of at least $17,914.

## EIGHTH CAUSE OF ACTION
**(Failure to Provide Rest Periods – Cal. Labor Code § 226.7, IWC Wage Order 15)**
**Against All Defendants**

77. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

78. Under California Labor Code section 226.7 and IWC Wage Order 15, Sumiati was entitled to a ten-minute rest period for every four hours worked.

79. Defendants were Sumiati's employers within the meaning of California Labor Code section 1182.12 and IWC Wage Order 15. Defendants were therefore obligated to provide Sumiati with a ten-minute rest break for every four hours she worked.

80. Defendants failed to provide Sumiati with rest periods.

81. As a result of Defendants' violations of California Labor Code section 226.7 and IWC Wage Order 15, Sumiati is entitled to recover from Defendants, jointly and severally, one hour of pay for each workday that a rest period was not provided and reasonable attorneys' fees and costs, totaling $17,914, including pre- and post-judgment interest, in amounts to be proven at trial.

**NINTH CAUSE OF ACTION**
**(For Waiting Time Penalties – Cal. Labor Code § 203)**
**Against All Defendants**

82. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

83. Under California Labor Code section 203, employees may recover penalties against employers for failing to pay wages due to them in full upon discharge. The penalty is equal to the amount of the employee's daily wage for each day that the employee has not received her outstanding wages, not to exceed 30 days.

84. Defendants unlawfully terminated Sumiati's employment on November 10, 2023.

85. Defendants did not pay, and have not paid, Sumiati the wages to which she was entitled at any time after her unlawful termination.

86. More than 30 days have passed since Defendants unlawfully terminated Sumiati.

87. Defendants' unlawful failure and refusal to pay Sumiati the wages she was due at the time of her unlawful termination entitles her to waiting time penalties for the maximum 30-day period under California Labor Code section 203, totaling at least $10,462.50.

**TENTH CAUSE OF ACTION**
**(For Retaliation and Wrongful Termination – Cal. Labor Code § 98.6)**
**Against All Defendants**

88. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

89. Under California Labor Code section 98.6, employers may not retaliate against any employee for complaining orally or in writing about any of the rights provided under the Labor Code or IWC Orders. Employers who terminate an employee in retaliation for complaining about her rights are liable for reimbursement of her lost wages and work benefits, as well as a civil penalty of up to $10,000 per violation to be awarded to the employee.

90. On November 10, 2023, Defendants Hu and Deng unlawfully threatened to deduct a month's wages from Sumiati for allegedly ruining chicken she had been cooking for Defendant CrystalG. When Sumiati requested that she be given rest of the day off if her wages were to be deducted, Defendants Hu and Deng retaliated against her by firing her and evicting her from their home. Defendants Hu and Deng also confiscated Sumiati's cellphone, which was her main source of communication.

91. Defendants Hu and Deng unlawfully terminated Sumiati for raising her objection to this unlawful wage deduction.

92. Defendants' unlawful retaliation against and wrongful termination of Sumiati entitles her to penalties and lost wages under California Labor Code section 98.6, totaling at least $468,815.50.

**ELEVENTH CAUSE OF ACTION**
**(For Solicitation of Employee Through Misrepresentation – Cal. Labor Code §§ 970, 972)**
**Against Defendants Hu and Deng**

93. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

94. Labor Code section 970 prohibits persuading a person to travel from outside California to within this State for the purpose of working in any capacity through or by means of knowingly false representations. Violations of Labor Code section 970 give rise to criminal and civil penalties, including double damages resulting from such misrepresentations under Labor Code section 972.

95. Defendants Hu and Deng intentionally made misrepresentations of material facts, directly and through their agents, regarding the terms of Sumiati's employment, including but not limited to the representation that Sumiati would be paid at least 800 Singapore dollars per month for her services. When Hu and Deng made this representation, they knew it was material and false, or had no reasonable ground for thinking that the representation was true. Defendants Hu and Deng made the representation with the intent to defraud and induce Sumiati to come to the United

States. At the time Sumiati acted, Sumiati did not know that the representation was false and believed it to be true. Sumiati considered the representation material and reasonably relied upon the representation to change her residence for the purpose of working for Defendants.

96. By virtue of Defendants Hu and Deng's misrepresentation and Sumiati's reliance upon it, Sumiati has suffered damages totaling at least $468,815.50, and is entitled to all appropriate penalties provided by the Labor Code and the IWC Wage Orders, including double damages totaling at least $937,631.

**TWELFTH CAUSE OF ACTION**
**(For Fraud)**
**Against All Defendants**

97. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

98. Defendants, directly or through their agents, made misrepresentations of material facts regarding the nature of Sumiati's employment, including but not limited to the representation that Sumiati would be paid at least 800 Singaporean dollars per month for her services. When Defendants made these representations, they knew they were false, or made the representations recklessly with no regard for their truth, or had no reasonable grounds for thinking that the representations were true. Defendants made the representations with the intent to defraud and induce Sumiati to come to the United States. At the time Sumiati acted, Sumiati did not know that the representations were false and believed them to be true. Sumiati considered the representations material and reasonably and substantially relied upon the representations to leave her home in Indonesia to work for defendants.

99. Defendants had, and continue to have, both access to and actual possession of superior knowledge and special information with regard to facts relevant to a determination of Sumiati's rights as an employee in California. This superior knowledge and information includes but is not limited to knowledge of legal requirements for employers and amounts established by California law as the minimum

wage. As a result of Defendants' access to superior knowledge and their actual possession of such knowledge, Defendants gained an unconscionable advantage and exerted undue influence over Sumiati, who was ignorant of facts relevant to her employment status and rights and who was not in a position to become informed of such facts.

100. Despite their superior knowledge and information, Defendants intentionally concealed from Sumiati that she was entitled to minimum wage, overtime compensation, and other legal protections and benefits available to employees under California law. Defendants actively and intentionally concealed these known, material facts with the intent to induce Sumiati to accept her unpaid, captive status, and for the purpose of preventing Sumiati from asserting her rights in any legal forum available to her. Because of Defendants' superior access to relevant knowledge and information about Sumiati's employment status and rights, Sumiati justifiably relied upon Defendants' false representations to her detriment.

101. As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Sumiati has lost wages and other benefits totaling at least $468,815.50. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION
## (For False Imprisonment)
## Against Defendants Hu and Deng

102. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

103. Defendants Hu and Deng intentionally violated Sumiati's personal liberty and deprived Sumiati of freedom of movement by acting in a manner that had the effect

of confining her against her will and limiting her contact with anyone from the world outside Defendants' home. Defendants Hu and Deng accomplished this restraint through extreme psychological abuse, fraud, and by otherwise acting in a manner that had the effect of threatening harm to Sumiati if she tried to escape.

104. As a proximate result of said conduct, Sumiati has suffered and continues to suffer extreme mental distress, humiliation and anguish, and other injuries, as well as economic losses, all to her damage totaling at least $468,815.50. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

## FOURTEENTH CAUSE OF ACTION
**(For Conversion)**
**Against Defendants Hu and Deng**

105. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

106. Defendants Hu and Deng, without Sumiati's consent, intentionally took possession of Sumiati's passport for the entire duration of her employment, and/or prevented Sumiati from having access to her passport for that period of time. Defendants Hu and Deng also took possession of Sumiati's money.

107. As a proximate result of this conduct, Sumiati suffered injury, damage, loss and/or harm entitling her to damages totaling at least $468,815.50. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to

exemplary and punitive damages from Defendants in an amount to be proven at trial.

**FIFTEENTH CAUSE OF ACTION**
**(For Violation of California Penal Code Section 496)**
**Against All Defendants**

108. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

109. At all times relevant herein, Sumiati was the rightful owner of wages that Defendants wrongfully withheld from her.

110. For their own financial gain, Defendants have (1) engaged in a manner of theft and have received/and or concealed stolen property as defined by California Penal Code sections 484(a) and 496(a); or (2) aided and abetted the other Defendants in receiving and/or concealing stolen property in a manner of theft as defined by California Penal Code sections 494(a) and 496(a).

111. Penal Code section 496(a) makes receiving or buying property "that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," a criminal offense punishable by imprisonment.

112. Penal Code section 496(c) provides that any person "who has been injured by a violation of [subdivision (a)] . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

113. A criminal conviction under Penal Code section 496(a) is not a prerequisite to recover treble damages under section 496(c).

114. The phrase "any manner constituting theft" under section 496(a) includes theft by false pretenses and is defined in section 484(a) as follows: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her,

or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

115. Defendants have siphoned away, retained, and continue to retain money, wages, and/or other personal property belonging to Sumiati, which they obtained by way of false pretense as alleged herein.

116. In a manner constituting theft, Defendants misappropriated Sumiati's money, wages, and other personal property, and each of the Defendants have aided and abetted the other Defendants in receiving and withholding the same.

117. In doing so, Defendants have knowingly received and are deliberately withholding monies from Sumiati, knowing that such property has been stolen from her or obtained in a manner constituting theft.

118. As a direct and proximate result of Defendants' conduct, Sumiati has sustained actual damages totaling at least $468,815.50.

119. Under Penal Code section 496(c), Sumiati is a person who has been injured by a violation of Penal Code section 496(a) and demands treble damages, costs of the suit, and attorneys' fees. Further, Defendants' conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendants acted with full knowledge of the consequences to Sumiati, with the intent to violate the statutory and other rights of Sumiati, or with a willful, conscious, wanton and reckless disregard for Sumiati's rights and for the deleterious consequences and cruel and unjust hardship resulting to Sumiati. Consequently, Sumiati is entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

**SIXTEENTH CAUSE OF ACTION**
**(Breach of Oral Contract)**
**Against All Defendants**

120. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

121. Defendants employed Sumiati under oral contracts that purported to set out the terms of her employment and that were annually renewed by Defendants.

122. Under the terms of these contracts, Sumiati was entitled to medical insurance, food, and lodging, in addition to her wages. Sumiati was also entitled to Defendants Hu and Deng's sponsorship of her green card application as a term of her employment contracts.

123. Sumiati relied on the representations in these contracts to inform her decision to move to the United States. She fulfilled the terms of these agreements by working in excess of the promised hours and was forced repeatedly to work overtime hours.

124. Defendants paid Sumiati far less than her stated contractual wage and paid her no overtime wages at all. Indeed, Defendants often docked Sumiati's pay with no reasonable justification.

125. While Defendants Hu and Deng provided Sumiati with a room, she was often roused from sleep to perform employment tasks in the middle of the night, thus offering her no privacy.

126. Defendants failed to provide Sumiati with medical assistance or insurance, ensuring that Sumiati received no medical care during her entire term of employment with Defendants in the United States.

127. While Defendants promised they would hold some of Sumiati's wages to save for her green card application, Defendants ultimately never gave Sumiati her earned wages even after they terminated her. Nor did Defendants ever submit the purported savings to pay for Sumiati's green card application.

128. Sumiati was forced to work long hours under grueling conditions at wages

far below those guaranteed in her contracts.

129. As a result of Defendants' breaches of these oral employment contracts, Sumiati suffered significant economic harm and should be compensated for this loss, which totals at least $468,815.50.

**SEVENTEENTH CAUSE OF ACTION**
**(Violation of Business & Professions Code Sections 17200 et seq.)**
**Against All Defendants**

130. Sumiati re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

131. California Business and Professions Code sections 17200 et seq. prohibit unfair competition, including through any unlawful, unfair, or fraudulent business act or practice.

132. Defendants improperly, fraudulently, and unlawfully (a) failed to pay minimum and overtime wages to Sumiati as required by federal, California law; (b) failed to provide Sumiati with accurate written statements of her wages earned, hours worked, and deductions as required by California law; and (c) failed to provide meals and rest periods to Sumiati as required by California law. These violations serve as unlawful, unfair, and/or fraudulent acts and practices for purposes of California Business and Professions Code section 17200.

133. Sumiati has suffered injury and lost money as a result of Defendants' unlawful, unfair, and/or fraudulent acts and practices and, as such, is entitled to bring civil action against them for their unfair competitive practices. Cal. Bus. & Prof. Code § 17204.

134. As a result of Defendants' violations of California Business and Professions Code sections 17200 et seq., Sumiati is entitled to recover from them, jointly and severally, remedies or penalties allowed under sections 17200 et seq., including restitution totaling at least $468,815.50.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court enter judgment against Defendants for the following:

1. Unpaid minimum and overtime wages, totaling at least $468,815.50;
2. Liquidated damages pursuant to Labor Code section 1194.2(a), totaling at least $322,452;
3. Double damages pursuant to Labor Code section 972, totaling at least $937,631;
4. Waiting time penalties pursuant to Labor Code section 203, totaling at least $10,462.50;
5. Wages under Labor Code section 226.7 in the amount of one additional hour of pay for each work day that a meal period was not provided, and an additional hour of pay for each work day that a rest period was not provided, totaling $35,828;
6. General, compensatory, and special damages, according to proof;
7. Treble damages pursuant to California Civil Code section 52.5(b) and Penal Code section 496, totaling at least $2,405,190;
8. Monetary restitution;
9. Punitive damages according to proof;
10. Reasonable costs and attorney's fees;
11. Such other and further relief as the Court deems just and proper.

Dated: January 7, 2026

By: */s/ Jeffrey A. Rosenfeld*

**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld
jeffrey.rosenfeld@alston.com
Brooke Bolender
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1143

**BET TZEDEK LEGAL SERVICES**
Mary Tanagho Ross
E-mail: mross@bettzedek.org
Kelsey Chapple
E-mail: kchapple@bettzedek.org
3250 Wilshire Boulevard, 13th Floor
Los Angeles, California 90010
Telephone: (323) 939-0506

*Attorneys for Plaintiff SUMIATI*

## JURY TRIAL

Sumiati requests a jury trial on all triable issues.

Dated: January 7, 2026

By: */s/ Jeffrey A. Rosenfeld*

**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld
jeffrey.rosenfeld@alston.com
Brooke Bolender
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1143

**BET TZEDEK LEGAL SERVICES**
Mary Tanagho Ross
E-mail: mross@bettzedek.org
Kelsey Chapple

E-mail: kchapple@bettzedek.org
3250 Wilshire Boulevard, 13th Floor
Los Angeles, California 90010
Telephone: (323) 939-0506

*Attorneys for Plaintiff SUMIATI*